LEONARD HARDAKER's (dependent's) CASE.

Hampden.    November 6, 1930. — January 5, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act,* To whom act applies. *Agency,* Existence of relation, Independent contractor.

A salesman of a corporation for a certain commission sold its goods within a defined territory, for which purpose he travelled in an automobile owned by him and registered in his name. He paid for the gasoline and oil used and for the insurance, maintenance and repairs. The corporation assumed no responsibility for the automobile. The corporation required him to be at a certain place in his territory at a certain hour every morning and had control over his personal conduct while he was at work; it did not prescribe the way in which he should operate his route. He was killed when, while travelling within his territory, his automobile was struck by a train at a railroad crossing. In proceedings under the workmen's compensation act, it was *held,* that

(1) A finding, that at the time of his injury the decedent was operating the automobile as an employee of the corporation and not in his own right, was unwarranted;

(2) The claimant was not entitled to compensation.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Material evidence at the hearing before the single member of the board is stated in the opinion. The single member found "that the decedent at the time of his injury and

death was an employee of the subscriber within the meaning of the act, and was not an independent contractor; and that at the time of his injury and death he was engaged in the business or enterprise of his employer, the subscriber in this case." This finding was affirmed and adopted by the board on review. In the Superior Court, a final decree was entered by order of *Broadhurst*, J., in accordance with the board's decision. The insurer appealed.

The case was submitted on briefs.

*H. S. Mitchell & H. A. Moran,* for the insurer.

*F. J. McKay,* for the claimants.

SANDERSON, J. On February 13, 1929, Leonard Hardaker, while driving his own truck over a crossing of a railroad track, was struck by a train and received fatal injuries. He left children under the age of eighteen. The written contract of his employment provided that he should act as agent, in a territory described, for the sale of the products of the Dolly Madison Baking Corporation as principal, herein referred to as the subscriber, and do all things necessary to promote the interests of the subscriber in that territory. He was to be paid a stated commission on the sales of the subscriber's products and a smaller commission on the sales of products of other bakers bought by the decedent through the subscriber, and he agreed to sell no other products than those of the subscriber without the permission of the latter and to pay for the products upon delivery to him. The subscriber agreed to include in its regular outdoor advertising the territory referred to in the contract. The decedent was to use a delivery truck painted in the standard colors and design of the subscriber and to keep the equipment neat and clean. The subscriber agreed to letter the decedent's truck without cost to him, and his name in full was to be painted on each side. The decedent was required to carry insurance on his delivery equipment against loss by fire and theft, and also against loss by property damage and public liability. The subscriber was to make repairs on the truck at cost for cash and to sell to the decedent major parts and tires at cost for cash, and

in case the latter desired to discontinue the relationship he was permitted to dispose of the business to another only with the approval of the subscriber, and in the event of termination of the relationship, he agreed not to sell bread in the designated territory for a period of six months thereafter without the consent of the subscriber.

The manager of the subscriber testified that he was the decedent's superior; that at the time of the accident the decedent was going in the direction of a town in which, as well as in other towns in the vicinity, the subscriber had customers; that he was on an established route controlled by the subscriber but served by the decedent for it; that he could not sell goods in any other territory; that he worked for no one else; that he would start in the morning from the bakery and the witness told him where to go; that if the witness heard of new customers he would instruct the decedent to call on them; that the decedent's name appears on the payroll; that he understood that the premium paid the insurer was based partly upon the commission received by the decedent; that ordinary salesmen could return unsold goods purchased of the subscriber, getting a credit for them, but that the decedent did not have that right; that the truck was registered in the name of the decedent who paid for the gasoline, oil and necessary repairs, and was "responsible for it; it was his equipment"; that the subscriber was interested to see that the customers were served properly, and in the matter of control over the decedent in his daily work it insisted that he leave at a certain hour in the morning and required him to be in a town in the territory at a specified time but otherwise did not have much control over him; that it did not prescribe the way in which he should operate his route; that if he saw fit to change his schedule and take in one town before another the subscriber did not object, considering the business to be his and that he would want to increase his own income. He also testified that the company had control over the decedent's personal conduct while he was out on this territory; that if someone called up and said that he was not conducting

himself in a way that would help the business the witness would check up the complaint and, if found to be true, would caution the decedent, and if the conduct continued and the business suffered the contract with him would be terminated. In reply to the question whether the decedent could do as he pleased, the witness said: "It was his own business and we considered he was doing the best for his personal interests."

The final decree states that the insurer in open court expressly waived any claim that the deceased's injury was due to his serious and wilful misconduct. It decided that the employee received a personal injury arising out of and in the course of his employment which resulted in death; that he was at the time of the injury engaged in the business and enterprise of his employer and was not an independent contractor, and ordered compensation.

In *Marsh* v. *Beraldi*, 260 Mass. 225, 231, the court stated in substance that the location of the power of control is decisive of the question whether a person employed is a servant. "If it rests in the employer, the employed is a servant. If it rests in the employed, he is an independent contractor." The burden of proving that the decedent was at the time of the accident operating the automobile as servant of the insured and not in his own right was on the claimants. *Bradley's Case*, 269 Mass. 399, 401, and cases cited. In *Khoury* v. *Edison Electric Illuminating Co.* 265 Mass. 236, 239, the principle was recognized that a person may be an agent or servant as to one part of an undertaking and an independent contractor as to other parts. Compensation could not have been awarded in the case at bar unless a finding, that in managing and operating his truck at the time of the accident the decedent was subject to the control of the subscriber, was justified. It is not necessary to decide whether at other times and in respect to other matters the parties could rightly be found to be acting in pursuance of a contract of hire.

The decedent was operating his own motor vehicle registered in his own name. He paid for the gasoline and oil

used, for the insurance, maintenance and repairs. The subscriber assumed no responsibility for it. Neither the terms of the written contract nor the testimony of the subscriber's manager when fairly construed would justify a finding that the subscriber's right to control the personal conduct of the decedent included the right to control the manner in which he should manage and operate his own truck, and the conclusion that at the time of his injury the decedent was an employee of the subscriber engaged in its business and not an independent contractor is unwarranted. The case in this respect comes within the principle stated in *Hewitt's Case,* 225 Mass. 1, *Pyyny* v. *Loose-Wiles Biscuit Co.* 253 Mass. 574, *Towne's Case,* 254 Mass. 280, *Khoury* v. *Edison Electric Illuminating Co.* 265 Mass. 236, 240, *Bradley's Case, supra, Schofield's Case,* 272 Mass. 229, 231, and is distinguishable in its facts from *Pelletier's Case,* 269 Mass. 490, in which the employee, in permitting his automobile to be operated by the employer's son so that he might be able to operate it for the benefit of the employer's business, was carrying out specific instructions of his employer.

*Decree reversed.*

*Decree to be entered for insurer.*